IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

_____

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY ) | |
| EMPLOYES DIVISION/IBT ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.  8:19-cv-466 |
| ) | |
| ) | |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Defendant. ) | |

_____)

## COMPLAINT

The Brotherhood of Maintenance of Way Employes Division/IBT("BMWED" or "Union") brings this complaint against Union Pacific Railroad Co. ("UP" or "Carrier") for a declaratory order that UP would violate Sections 2 First, Second, Third and Fourth of the Railway Labor Act ("RLA"), 45 U.S.C. §152 First, Second, Third and Fourth, by refusing to bargain with BMWED on a single carrier, craft-wide, system-wide basis with representatives designated by BMWED and by insisting that BMWED bargain with UP as part of a coalition of other rail carriers. BMWED further seeks an injunction prohibiting UP from violating the RLA in this manner.

## PARTIES

1.  BMWED is an unincorporated labor association that maintains its headquarters in

Novi, Michigan.  On January 1, 2005, the BMWED became an autonomous division of the International Brotherhood of Teamsters.  Prior to that date, BMWED was an international union founded in 1887 that went by the name Brotherhood of Maintenance of Way Employes ("BMWE"). BMWED is the representative for collective bargaining under Section 1 Sixth of the RLA, 45 U.S.C. §151 Sixth, of all employees of UP working in the class or craft of maintenance of way employee

2.   UP is a rail carrier as that term is defined in Section 1 First of the RLA. UP conducts rail operations in various States in the Western portion of the United States, including Nebraska; and UP is headquartered in Nebraska. The current UP is the product of control and merger transactions that combined the rail lines and properties of the former Union Pacific R. R., the former Missouri Pacific R.R., the former Southern Pacific Transp. Co. and the former Chicago and North Western Transp. Co.,  and other formerly separate railroads.

## JURISDICTION AND VENUE

3.   This Court has jurisdiction to hear BMWED's complaint pursuant to 28 U.S.C. §§ 1331 and 1337 because it arises under the RLA, an act of Congress regulating interstate commerce; and because BMWED seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) and (c) because UP owns and operates lines of railroad within this District and is headquartered in this District.

## **STATEMENT OF THE CLAIM**

### **RLA Representation and Bargaining**

5. Under Section 2 of the Railway Labor Act, 45 U.S.C. §152, employees of a rail carrier in a particular craft or class have the right to bargain collectively with the rail carrier through a collective bargaining representative. Representation must be for the entire craft or class and system-wide across the entire carrier.

6. Railway Labor Act agreements do not expire; rather, they are periodically amended. A basic collective bargaining agreement between a rail union and a rail carrier may have its origins in an agreement that was entered a decade or more ago which has been updated and then amended from time to time. When a rail carrier, or a union representing its employees, seeks to change the rates of pay, rules or working conditions for a craft or class of the carrier's employees, Section 6 of the RLA, 45 U.S.C. §156, requires that the union or carrier provide written notice of the changes it seeks (commonly referred to as a "Section 6 Notice"). Section 6 further requires that the parties negotiate, and that rates of pay, rules or working conditions not be changed by the carrier until completion of bargaining. If mediation is invoked under RLA Section 5, 45 U.S.C. §155, no change may be made in rates of pay, rules or working conditions or established practices until completion of mediation.

7. If a dispute over changes to RLA agreements is not resolved through bargaining and mediation, it may be resolved by the exercise of self-help (such as a strike or similar action by the union, or a lockout or unilateral imposition of terms by the carrier), unless the parties agree to arbitration under Section 7 of the RLA, 45 U.S.C. §157; or unless a Presidential Emergency

Board ("PEB") is established under Section 10 of the RLA, 45 U.S.C. §160, in which case the parties must refrain from exercising self-help after creation of the PEB and for thirty days after issuance of its report.

### BMWED'S Agreements With UP

8.   BMWED and the UP are parties to collective bargaining agreements that cover portions of the UP that previously were separate railroads; including: an agreement covering the property of the former Union Pacific Railroad portion of the current UP ("July 2001 Agreement"); an agreement covering the former Missouri Pacific portion of the current UP ("January 2001 Agreement"); an agreement covering the former Southern Pacific portion of the current UP ("December 2003 Agreement"); and an agreement covering the property of the former Chicago and North Western Transp. Co. ("CNW") portion of the current UP ("November 2001 Agreement").  The July 2001 Agreement also applies to UP's large, mechanized "system gangs" that operate across the lines of the formerly separate carriers. BMWED's agreements with UP also incorporate certain agreements on specific subjects that were negotiated with multiple carriers (such as a vacation agreement, a union shop agreement and a job stabilization agreement).

9. BMWED's agreements with UP were last amended through an agreement and arbitration award that was the culmination of negotiation and mediation processes under Sections 6 and 5 of the RLA. That agreement and award were the product of national bargaining (or "national handling") between BMWED and various rail carriers including UP. That agreement and award amended existing rates of pay and health benefits for UP's BMWED represented

employees under BMWED's various collective bargaining agreements with UP. That agreement and award also established a moratorium period barring the service of any Section 6 notices for changes in agreements until November 1, 2019.

### Single and Multi-Carrier Bargaining in the Railroad Industry

10. Although rail carriers are required to bargain with the representatives of their employees, and RLA representation is systemwide for an entire craft or class, rail carriers and rail unions have sometimes formed coalitions for bargaining through "national handling" where bargaining has been conducted between coalitions of rail carriers and single rail unions, and between coalitions of rail carriers and coalitions of rail unions, but the resulting agreements amend the existing collective bargaining agreements covering a craft or class on a particular rail carrier. In the last few decades, most rail carriers, including UP, have sought to bargain in coalition with other rail carriers through the National Carriers' Conference Committee ("NCCC"). Over that period, rail unions, including BMWED, have sometimes formed coalitions composed of various unions to bargain with the NCCC.

11. However, not all rail carriers and unions bargain through national handling; instead their bargaining is between the carrier and the union representing the carrier's employees in a particular craft or class on a systemwide basis.

12. In some instances, either carriers or unions have resisted national handling, and asserted a desire to bargain on a carrier basis or even on the basis of a particular agreement.

### The End of the Current Moratorium Period and Approaching Service of Section 6 Notices

13. The current moratorium period on service of Section 6 notices by BMWED and UP

expires on November 1, 2019.

14. BMWED intends to serve a Section 6 notice on UP for changes in the various BMWED-UP agreements on or about November 1, 2019.

15. In addition to changes in wages and benefits, BMWED's Section 6 Notice will seek changes in various work rules under the different BMWED-UP agreements. Because of the proposals for changes to work rules specific to the BMWED-UP agreements, BMWED will seek to bargain directly with UP in single carrier bargaining, consistent with BMWED's system-wide, craft-wide representation of UP's maintenance of way employees.

16. On information and belief, including the experience of bargaining over past Section 6 Notices, UP will oppose single carrier bargaining with BMWED.

## **FIRST CAUSE OF ACTION**

17. BMWED incorporates by reference as if fully set forth herein each and every allegation of paragraphs 1 through 16.

18. Section 2 Second of the RLA, 45 U.S.C. §152 Second, provides:

Consideration of disputes by representatives

"All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute"

19. Section 2 Third of the RLA, 45 U.S.C. §152 Third, provides:

Designation of representatives

Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

20.  Section 2 Fourth of the RLA, 45 U.S.C. §152 Fourth, provides (in pertinent part):

Organization and collective bargaining; freedom from interference by carrier....

Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter....

21. Decisions applying Section 2 of the RLA hold that a carrier is obligated to treat with the representative of a craft or class of its employees and is obligated not to treat with anyone else as representative of that craft or class.

22. Under the RLA, representation of a craft or class is craft-wide and system-wide, for all employees in a craft or class of a particular carrier.

23. By refusing to bargain with BMWED on a single carrier, craft-wide, system-wide basis with representatives designated by BMWED, UP would violate Sections 2 Second, Third and Fourth by a) refusing to conference with the representatives for bargaining designated by BMWED; b) interfering with BMWED's designation of representatives for bargaining with UP; c) interfering with BMWED's organization for bargaining and the right of UP's maintenance of way employees to bargain through their designated representative for bargaining as it chooses to bargain; and d) by refusing to treat with the systemwide representative of the craft or class of its

7

maintenance of way employees on a single carrier basis.

## SECOND CAUSE OF ACTION

24. BMWED incorporates by reference as if fully set forth herein each and every allegation of paragraphs 1 through 23.

25. Section 2 First of the RLA, 45 U.S.C. §152 First, provides:

Duty of carriers and employees to settle disputes

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

26. The duty imposed by Section 2 First has been held to include a duty to bargain in good faith.

27. By refusing to bargain with BMWED on a single carrier, craft-wide, system-wide basis with representatives designated by BMWED, UP would violate Section 2 First by failing and refusing to make every reasonable effort to make agreements and settle all disputes, and to bargain in good faith.

## REQUEST FOR RELIEF

WHEREFORE, BMWED respectfully requests that the Court

A. DECLARE that by refusing to bargain with BMWED on a single carrier, craft-wide,

system-wide basis with representatives designated by BMWED, UP would violate RLA Sections

2 Second, Third and Fourth;

      B.   DECLARE that by refusing to bargain with BMWED on a single carrier, craft-wide,

system-wide basis with representatives designated by BMWED, UP would violate RLA Section

2 First;

      C. DECLARE that UP must bargain with BMWED on a single carrier, craft-wide,

system-wide basis with representatives designated by BMWED;

      D.  ENJOIN UP from refusing to bargain with BMWED on a single carrier, craft-wide,

system-wide basis with representatives designated by BMWED;

      E. GRANT BMWED reasonable attorneys' fees and the costs of this action as well as any

other relief that the Court deems just and proper.


## REQUEST FOR PLACE OF TRIAL

The Plaintiff requests trial to be held at Omaha, Nebraska.

Respectfully submitted,

|  | /s/ Richard S. Edelman |
|---|---|
|  | Richard S. Edelman |
|  | Mooney, Green, Saindon, Murphy & Welch, P.C. |
|  | 1920 L Street NW, Suite 400 |
|  | Washington, DC  20036 |
|  | (202) 783-0010 |
|  | Redelman@MooneyGreen.com |
|  |  |
|  | /s/ Robert E. O'Connor, Jr. |
|  | Robert E.  O'Connor, Jr. |
|  | P.O. Box 451116 |
|  | Omaha, NE 68145 |
|  | Telephone: (402) 330-5906 |
|  | reolaw@aol.com |
| October 23, 2019 |  |

Attorneys for Plaintiffs Brotherhood of Maintenance of Way Employes Division/IBT